UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CECILIA MARIA FUENTES BOTELLO, <br><br> Plaintiff, <br><br> v. <br><br> DONALD J. TRUMP *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 19-cv-3277 (TSC) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Plaintiff Cecilia Maria Fuentes Botello, appearing *pro se*, has brought this "Action to Compel an Officer of the United States to Do Its Duties 28 U.S.C. § 1361 in Enforcing the Asylum Laws, 8 U.S.C. § 1158 and 8 U.S.C. §1225 and Under UN Treaty of International Covenant of Civil and Political Rights of 1992 Et Al," ECF No. 1. Defendants have moved to dismiss for lack of subject matter jurisdiction, ECF No. 13, and Plaintiff has moved to amend the complaint, ECF No. 24.[1] For the following reasons, Defendants' motion will be GRANTED, and Plaintiff's motion will be DENIED.[2]

---

[1] Also pending is Defendants' motion filed "in an abundance of caution" to seal their declarations "to provide Fuentes Botello greater confidentiality" and to satisfy the nondisclosure provisions of 8 C.F.R. § 208.6(a)(b). Mot. at 1, ECF No. 14. The court, having considered Plaintiff's opposition evidencing her consent to disclosure, *see* ECF No.15, will deny the motion to seal.

[2] "A district court may deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss." *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012).

1

## I. BACKGROUND

Plaintiff alleges that she "is or was a Cuban National" who in February 2019 was "physically detained [in Cuba] and harassed by Cuban Authorities for political retaliation due to making a comment, on Cuba's political Referendum of Article Ill for the New Constitution voted on February 24, 2019." Compl. at 2. Following an allegedly horrendous three-day detention, Plaintiff was released from custody on February 25, 2019. *See* Pl.'s Aff. at 10-13, ECF No.1-1. That same day, Plaintiff's mother called an aunt in California who suggested that Plaintiff go to Mexico to apply for political asylum in the United States, where she could then live with her aunt. *Id*. at 13–14. On April 16, 2019, Plaintiff flew from Cuba to Nicaragua, where she paid a "Coyote" to take her to Mexico. *Id*. at 14. On April 23, 2019, Plaintiff arrived in Tapachula, Chiapas, Mexico, where she suffered serious setbacks. *See id*. at 14-15. Eventually, Plaintiff traveled by bus to Mexico City, and on May 19, 2019, she arrived in Juarez, Mexico, just across the border from El Paso, Texas. *See id*.at 15-16. In Juarez, Plaintiff worked for meager pay and lived in squalid, unsafe conditions; by October 2019, she was unemployed. *See id*. at 16-19.

Plaintiff alleges that "the Cuban Government has classified [her] as a, 'Cusano' . . . or 'Worm' in English," which "is a death penalty crime against the Revolution[.]" Compl. at 2. It is for this reason that Plaintiff "seeks" asylum in the United States. *Id*. (citing 8 U.S.C. § 1158(a)(1) and § 1225(b)). She seeks a writ of mandamus under 28 U.S.C. § 1361 to compel action under the following provision.[3]

---

[3] Although the complaint's title includes the "UN Treaty of International Covenant of Civil and Political Rights of 1992 Et Al," Plaintiff, who has the burden of establishing

2

> Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title.

8 U.S.C. § 1158(a)(1).  Section 1225(b) governs "Inspection of applicants for admission" by immigration officers.  Under the preceding subsection, "an alien present in the United States who has not been admitted or who arrives in the United States" is "deemed" under the Immigration and Nationality Act to be "an applicant for admission."  8 U.S.C. § 1225(a).

**II. LEGAL STANDARD**

"Federal district courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal

---

federal court jurisdiction for each claim, has pled nothing to explain the treaty's application.  Regardless, "while treaties may comprise international commitments, they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms." *Medellin v. Texas*, 552 U.S. 491, 505 (2008) (internal quotation marks, ellipsis, and citation omitted). The "International Covenant on Civil and Political Rights, is a ratified treaty but was submitted and ratified on the express condition that it would be 'not self-executing.'"  *Igartua-De La Rosa v. United States*, 417 F.3d 145, 150 (1st Cir. 2005) (citing 138 Cong. Rec. S4781, S4784 (daily ed. Apr. 2, 1992)).  Consequently, it does not "itself create obligations enforceable in the federal courts." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004); *see id*. at 728 (noting that "the Senate has expressly declined to give the federal courts the task of interpreting and applying international human rights law, as when its ratification of the International Covenant on Civil and Political Rights declared that the substantive provisions of the document were not self-executing") (citation omitted)).

citations omitted). "Subject-matter jurisdiction can never be waived or forfeited" because it "goes to the foundation of the court's power to resolve a case." *Gonzalez v. Thaler*, 565 U.S. 134,141 (2012); *Doe ex rel. Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996). Before proceeding to the merits of a claim, a court must satisfy itself that it has subject-matter jurisdiction to consider the claim. *See Brown v. Jewell*, 134 F. Supp. 3d 170, 176 (D.D.C. 2015) (courts "'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party'") (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

Federal courts are vested with the power of judicial review extending only to "Cases" and "Controversies." U.S. Const. art. III, § 2. Courts have, in interpreting this limitation on judicial power, "developed a series of principles termed 'justiciability doctrines,' among which are standing, ripeness, mootness, and the political question doctrine." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

In evaluating a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Nevertheless, "'the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.'" *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71,

73 (D.D.C. 2006)).  And while courts construe *pro se* filings liberally, *see Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), the non-justiciability of the case and the absence of jurisdiction cannot be overcome by liberal construction of the complaint.

**III. ANALYSIS**

Defendants argue that Plaintiff lacks standing to sue.  *See* Mem. at 11-14, ECF No. 13-1.  The court agrees.  The "core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  In order to satisfy the standing requirement, a plaintiff must establish at a minimum (1) that she has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical";  (2) that "a causal connection" exists "between the injury and the conduct complained of . . ., and [is] not the result of the independent action of some third party not before the court"; and (3) that the injury will "likely" be redressed by a favorable decision.  *Id*. at 560-61 (alterations, internal quotation marks, and citations omitted).

Plaintiff has not alleged, much less shown, that at the time of this lawsuit she had arrived or was present in the United States, applied for asylum under 8 U.S.C. § 1158, or participated in any immigration proceedings.[4]  Conversely, the Operations

---

[4]  Plaintiff baldly asserts that the U.S.-Mexico border was closed to her as an asylum applicant from Cuba.  *See* Compl. at 6-7.  Defendants' declarant counters that "there are 328 ports of entry in the United States," 24 of which are "along the land border with Mexico." Davies Decl. ¶ 4.  And between April 16, 2019, when Plaintiff left Cuba, "through the date of [her] complaint," filed October 23, 2019, "no land border port of entry was permanently closed nor closed for an unscheduled period more than a few hours." *Id*. ¶ 5.

Branch Chief for the Asylum Division of U.S. Citizenship and Immigration Services (USCIS) confirms "that USCIS has no record of Plaintiff having filed for an immigration benefit with the USCIS Asylum Division."  Decl. of Elizabeth Mura ¶ 3, ECF No. 14-2.  And the Acting Deputy Executive Director overseeing Admissibility and Passenger Programs for U.S. Customs and Border Protection (CBP) confirms that Plaintiff has never "been encountered, inspected, or apprehended by CBP" at any port of entry, including the United States-Mexico border.  Decl. of Matthew S. Davies ¶ 6, ECF No. 14-1.  Consequently, Plaintiff has not suffered an actual injury redressable by any court.

Since Plaintiff lacks standing to proceed, the court need not address Defendants' argument that mandamus jurisdiction is lacking.  *See Moms Against Mercury v. Food & Drug Admin.*, 483 F.3d 824, 826 (D.C. Cir. 2007) ("Where both standing and subject matter jurisdiction are at issue, a court may inquire into either and, finding it lacking, dismiss the matter without reaching the other.").  Nevertheless, the court finds that argument to be sustainable as well.  *See* Mem. at 14-15; *cf. Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020) (the "three threshold requirements" of mandamus, *i.e.*, a plaintiff's clear right to relief, a defendant's clear duty to act, and the unavailability of another adequate remedy, "are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction") (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (internal quotation marks omitted)).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be GRANTED,

and Plaintiff's motion to amend the complaint will be DENIED. A corresponding order will issue separately.

Date: February 10, 2021

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge